IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-02283-RBJ

LORRAINE B. MALDONADO,

    Plaintiff,

v.

MICHAEL ASTRUE, Commissioner of Social Security,

    Defendant.

ORDER

This matter is before the Court on review of the Commissioner's decision that denied plaintiff Lorraine Maldonado's application for Supplemental Security Income for disability benefits pursuant to Title XVI of the Social Security Act ("the Act"). Jurisdiction is proper under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). Ms. Maldonado is proceeding in this suit *pro se*. This dispute became ripe for decision by this Court upon the filing of plaintiff's Reply Brief on March 19, 2012. The Court apologizes to the parties for the delay in resolving the case.

**Standard of Review**

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the Secretary's decision and whether the Secretary applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence

supporting it." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2007). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

When a case involves a *pro se* party the court will "review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. U.S. Government*, 472 F.3d 1242, 1243 (10th Cir. 2007). However, "it is not the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (citing *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

**Facts**

The plaintiff, Lorraine Maldonado, was 55 years old in 2008 when she filed her claim for disability benefits claiming a disability onset date of 2002. In her application Ms. Maldonado explained that she suffered from several impairments including problems with left knee pain, diabetes, pain in her left thumb and wrist, hammer toes, and bunions on her feet.

<u>Medical History</u>

As a child Ms. Maldonado fell out of a second story window and injured her leg. Between 1988 and 1999 Ms. Maldonado underwent three surgeries on her left leg. Then, while working as a pricer at a Saver's Thrift Store she again injured her left leg. Ms. Maldonado was placed on workman's compensation for about a year and a half and treated by Dr. Stahl. R. 272. Dr. Stahl determined that an additional surgery would not be in Ms. Maldonado's best interest. *Id.* Instead, Dr. Stahl recommended a home exercise program and wearing a leg brace. *Id.* Dr.

Stahl also restricted Ms. Maldonado to no prolonged standing, no repetitive stairs, no squatting, and no lifting over 10 lbs. *Id.* The doctor noted that Ms. Maldonado would be best served in a sedentary job. *Id.*

At the hearing for her disability claim in 2010, Ms. Maldonado testified that she had been wearing her knee brace regularly for about a year; before that she would only wear it if she did a lot of walking. R. 36-37. Ms. Maldonado testified that in 2006 her knee pain would come and go, but around 2008 the pain became more constant. R. 39. Cold weather also exacerbated her knee pain. *Id.* By 2010 Ms. Maldonado had been using a heating pad for her knee pain for about two years. *Id.*

Ms. Maldonado also suffers from diabetes. She was diagnosed with diabetes in 1999, and it was well controlled until 2008. R. 216, 219, 224. Beginning in 2008 she had some fluctuations in blood sugar, especially when she was sick. R. 38. At the hearing in 2010 Ms. Maldonado testified that she took Glyburide and Metformin to manage her diabetes. *Id.*

Another impairment Ms. Maldonado suffers from is pain in her left thumb and wrist. In 2002 Ms. Maldonado, who is right handed, complained of a cyst on her left wrist and pain in her thumb. R. 231. The cyst resolved itself spontaneously. *Id.* The doctor prescribed a splint for her thumb and oral anti-inflammatories. *Id.* Following this course of treatment, the pain in her wrist and thumb was relieved until 2008. R. 35. At the hearing, Ms. Maldonado testified that she began suffering from pain in her wrist again in 2008 and began to wear a splint. R. 35-36. Beginning around 2008, she struggled using buttons and reaching behind her back. R. 48. Before 2008 Ms. Maldonado was able to complete grocery shopping and cooking on her own. R. 49. In 2010 Ms. Maldonado explained that although she still performs the cooking and shopping, her husband now has to help her with heavy pans or bags of groceries. R. 48.

Ms. Maldonado also suffered from pain in her feet. In 2003 Ms. Maldonado suffered from severe plantar fasciitis in both of her feet that caused chronic heel pain. R. 222. She was fitted for orthotics in 2003 which largely resolved her pain. *Id.* However, in 2008 Ms. Maldonado developed severe bunions and hammer toes which continue to cause her significant pain when on her feet. Ms. Maldonado would require surgery to resolve these symptoms.

Work History

Ms. Maldonado reported that she has a tenth grade education and no additional education or training. R. 28. Beginning in 1996 Ms. Maldonado worked for a janitorial company cleaning a commercial building. R. 28. After three months on that job, Ms. Maldonado began working at a thrift store sorting and pricing donations. R. 29. This job required Ms. Maldonado to be on her feet the entire day. R. 30. It was at this job that she reinjured her knee and was put on workman's compensation. R. 29. After that Ms. Maldonado went to work rebuilding computer cartridges using small hand tools. She left that job after three months because it was too hard on her eyes. R. 30. Next, Ms. Maldonado worked for a catalog company for almost two years putting together and shipping orders. R. 31. At this job Ms. Maldonado was on her feet the whole day. R. 32.

In 2007 Ms. Maldonado went to work for Ross department store. R. 32. At Ross Ms. Maldonado worked part time, about 28 hours a week. R. 34. While working at Ross, Ms. Maldonado was responsible for price checks and keeping the store floor neat. When Ms. Maldonado began working at Ross she was able to stand her entire eight hour shift without being uncomfortable. R. 46. However, Ms. Maldonado left Ross in 2008, because she was no longer able to stand on her left leg for prolonged periods of time without pain. R. 46-47.

**Conclusions**

To be eligible for social security disability insurance benefits, a claimant must: (1) be insured for disability benefits; (2) have not attained retirement age; (3) have filed a claim for disability insurance benefits; and (4) be under a disability. 42 U.S.C. § 423(a)(1). To be insured the applicant must have adequate social security earnings to be "fully insured," 20 C.F.R. §§ 404.110-404.115, and the onset of disability must occur while the applicant is fully insured. 20 CFR § 404.131(a). Fully insured status is based upon the number of quarters of coverage a person has earned based on her work history. 20 C.F.R. §§ 404.110-404.115. Based upon Ms. Maldonado's work history she was fully insured through March 31, 2006. Thus, March 31, 2006 is Ms. Maldonado's "date last insured" or DLI. To be eligible for disability insurance benefits, Ms. Maldonado must show that her disability began before March 31, 2006.

Ms. Maldonado has submitted medical records that show that beginning around 2008 she began to suffer from increased pain in her left leg, feet, and left wrist which forced her to stop working. Ms. Maldonado's own testimony confirms that many of her impairments did not escalate in severity until 2008. While Ms. Maldonado has offered substantial medical records of her current impairments, they are not relevant to the determination of whether she is entitled to social security disability insurance benefits, because her DLI is March 31, 2006. Accordingly, the ALJ's analysis relied upon only those impairments Ms. Maldonado was suffering from on or before March 31, 2006.

To determine whether a claimant is disabled an ALJ must employ the five step evaluation process that the Social Security Administration established for determining if someone is disabled. 20 CFR 404.1520(a). At the first step, the ALJ determines whether the claimant has engaged in substantial gainful activity since the onset of her disability. If a claimant engages in substantial gainful activity, she is not disabled no matter how severe her physical or mental

impairments may be. 20 CFR 404.1520(b). Substantial gainful activity is work that involves doing significant physical or mental activities and is usually done for pay or profit. 20 CFR 404.1572.

The ALJ analyzed Ms. Maldonado's activities after December 30, 2002, the date she claimed for onset of her disability. The regulations provide that earnings above a certain threshold are presumed to amount to substantial gainful activity. 20 CFR 404.1574(b)(2)(vii). Although Ms. Shrank worked some during that time, the ALJ determined that her earnings did not rise to the level for presumptive gainful activity. Accordingly, the ALJ determined that Ms. Maldonado's work since 2002 did not amount to substantial gainful activity. The substantial evidence in the record supported this conclusion.

Next, at step two the ALJ must determine what severe impairments a claimant suffers from. An impairment is severe if it imposes more than a minimal effect on a claimant's ability to perform work related activities. The ALJ determined that Ms. Maldonado suffered from diabetes, status-post three left knee surgeries in the remote past, arthritis in the left thumb, hammer toes, spurs, and bunions on feet. Ms. Maldonado does not suggest that the ALJ erred in determining that these were the impairments that Ms. Maldonado suffered from.

The third step requires an ALJ to compare the severe impairments from step two to those listed in 20 CFR Part 404, Subpart P, Appendix 1 and determine if they meet or are medically equivalent to the listed criteria. "For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis original).

The ALJ evaluated Ms. Maldonado's diabetes under Listing 9.08 and her foot and left knee impairment under 1.02(A) which evaluates serious dysfunction of a major peripheral weight-bearing joint such as hip, knee, or ankle. The ALJ determined that Ms. Maldonado's diabetes did not meet several of the criteria of 9.08. Similarly, Ms. Maldonado's foot and ankle impairments did not meet the criteria of 1.02A, because she was able to ambulate effectively, bathe, cook, clean, do laundry, and go to the store and appointments. The evidence in the record supports these conclusions.

At step four an ALJ must determine a claimant's residual functional capacity (RFC) and then compare the RFC to her past relevant work. If an ALJ determines that the claimant can perform her last relevant work, the claimant is not disabled. A residual functional capacity is what a claimant is still "functionally capable of doing on a regular and continuing basis, despite [her] impairments; the claimant's maximum sustained work capability." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). In his opinion, the ALJ determined that Ms. Maldonado had an RFC to perform a range of light work activities with additional limitations: she could lift and carry 10 pounds frequently and 20 pounds occasionally; sit six hours in an eight hour workday; stand or walk two hours at a time for a total of six hours in an eight hour work day; could occasionally stoop and kneel; could use her left arm for frequent but not constant reaching, handling, and fingering; and should avoid exposure to extreme cold. R. 12.

This RFC is supported by substantial evidence in the record. Ms. Maldonado testified that she was able to work at Ross department store in 2007 without discomfort and, according to the vocational expert, work at Ross would be characterized as light work. R. 46, 54. At that time Ms. Maldonado testified that she was able to stand for the entire eight hour day. R. 46. Further, the medical evidence shows that Ms. Maldonado's thumb and wrist pain was not

bothering her in 2006, and her orthotics had resolved the pain in her feet. R. 35, 222. The bulk of the evidence showed that after March 31, 2006, Ms. Maldonado's date last insured, she was still able to work a full day on her feet without pain. It was not until 2008, after Ms. Maldonado's insurance for disability benefits lapsed, that Ms. Maldonado's health deteriorated, and she was no longer able to work in a job that required her to be on her feet. Therefore, there is substantial evidence to support the ALJ's determination that Ms. Maldonado was able to perform light work in 2006.

Next, the ALJ compared this RFC to Ms. Maldonado's past relevant work. Ms. Maldonado's past relevant work included her time as a pricer in retail and an assembler rebuilding computer cartridges. The vocational expert determined that both of these jobs were considered light work and could be performed within the restrictions of Ms. Maldonado's RFC. R. 53-57. Additionally, the ALJ determined that Ms. Maldonado's ability to work at Ross after 2006 further corroborated her ability to perform light work in 2006. R.11, 14. Accordingly, there was substantial evidence to support the ALJ's determination that Ms. Maldonado could perform her past relevant work and thus was not disabled.

**Order**

The Commissioner's decision is affirmed.

DATED this 7th day of January, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge